1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OTHA GRAY,<br><br>             Plaintiff,<br><br>      v.<br><br>ALLISON, *et al.*,<br><br>             Defendants. | Case No.  1:23-cv-01285-BAM (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM, FAILURE TO OBEY COURT ORDER, AND FAILURE TO PROSECUTE<br><br>(ECF No. 14)<br><br>**FOURTEEN (14) DAY DEADLINE** |

I.  **Background**

Plaintiff Otha Gray ("Plaintiff") is a former state prisoner proceeding *pro se* in this civil rights action under 42 U.S.C. § 1983.

On October 15, 2025, the Court screened the complaint and found that it failed to state a cognizable claim under 42 U.S.C. § 1983.  (ECF No. 14.)  The Court issued an order granting Plaintiff leave to file a first amended complaint or a notice of voluntary dismissal within thirty (30) days.  (*Id.*)  The Court expressly warned Plaintiff that the failure to comply with the Court's order would result in a recommendation for dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim.  (*Id.*)  Plaintiff failed to file an amended

1

1  complaint or otherwise communicate with the Court, and the deadline to do so has expired.

2  **II.    Failure to State a Claim**

3      **A.    Screening Requirement**

4          The Court is required to screen complaints brought by prisoners seeking relief against a

5  governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C.

6  § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous

7  or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary

8  relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

9          A complaint must contain "a short and plain statement of the claim showing that the

10  pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

11  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

12  conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell*

13  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as

14  true, courts "are not required to indulge unwarranted inferences."  *Doe I v. Wal-Mart Stores, Inc.*,

15  572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

16          To survive screening, Plaintiff's claims must be facially plausible, which requires

17  sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable

18  for the misconduct alleged.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret*

19  *Serv*., 572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully

20  is not sufficient, and mere consistency with liability falls short of satisfying the plausibility

21  standard.  *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

22      **B.    Plaintiff's Allegations**

23          At the time of the events in the complaint, Plaintiff was housed in Corcoran State Prison.

24  Plaintiff names the following as defendants: (1) Kathleen Allison, Secretary for the California

25  Department of Corrections and Rehabilitation ("CDCR"), (2) Campbell, Warden, (3) J. Pruitt,

26  case records analyst ("CCRA"), (4) John Doe, case records supervisor.  Each defendant is sued

27  individually.

28  ///

2

1       In claim 1, Plaintiff alleges threat to safety in violation of the Eighth Amendment.

2   Plaintiff alleges the job of a Case Records Analyst is to accurately record the information

3   received from the court so that it correctly reflects the charges and sentence.  Any mistake could

4   double a sentence or unjustly label a man a child abuser.  Inmates convicted of these crimes have

5   been beaten and killed in prison.

6       It is common knowledge that prisoners with sex or child abuse charges are extorted,

7   beaten, and killed.  All inmates who want to live in peace must prove they do not have bad

8   charges by showing their legal status summary ("LSS") to the gang leader and shot callers on

9   their yard.  Prisoners get their LSS by requesting it through the mail from the Case Records

10  office, which prints and mails to the inmate.

11      Plaintiff does not have these bad charges, so he requested his LSS and it got mailed to him

12  on 12-21-22.  When he showed the LSS to a shot caller, that person noticed "notification

13  Required – child abuse" and several inmates immediately threated Plaintiff, extorted from his

14  canteen and told him he must get his family to send money.  This went on for 3 weeks.

15  Eventually on 1/14/23, Plaintiff was attacked on camera.  He dislocated his jaw and caused him to

16  develop severe and permanent fear, stress, and PTSD.  Plaintiff suffered permanent damage to his

17  future safety because everyone believes Plaintiff is a child abuser.

18      After Plaintiff was assaulted, he went to the Program Office to tell staff, who placed him

19  in the "hole" ("ASU") for 72 hours before moving him to another yard.  Plaintiff's wife called the

20  Ombudsman for Corcoran and later his counselor handed Plaintiff a new LSS where the child

21  abuse had been changed to "Notification required – inmates' family."  The LSS is created by a

22  Case Records "specialist" or "Analyst" who reviews the abstract of Judgment, Probation Report,

23  and Reporter's transcript of the sentence hearing and enters the information into the CDCR

24  computer system, and central file.  All of Plaintiff's documents show that Plaintiff's conviction is

25  for PC 273.5(a) "inflicting corporal injury on a spouse, etc."  The LSS shows the correct charge,

26  so there is no explanation why the case records analyst J. Pruit put that there was required child

27  abuse notification.

28  ///

1    Defendant J. Pruitt, CCRA, directly caused the wrongs Plaintiff suffered when he labeled

2    Plaintiff a child abuser, incorrectly and against all of the information available to the Analyst in

3    multiple documents, knowing that this label is dangerous.  It went beyond negligence to

4    deliberate indifference to the safety of Plaintiff.  He had a duty to protect Plaintiff from violence

5    at the hands of other inmates.

6    Defendant John Doe, the case records supervisor, failed to oversee Defendant J. Pruitt and

7    either hired someone unqualified or failed to adequately train the analyst.

8    Since it is a matter of life or death over what the LSS shows, it is the case records analyst

9    who directly caused the wrong,  The case records office supervisor, John Doe, failed to oversee

10   the analyst who caused the harm, hired someone unqualified for the position or failed to

11   adequality train the analyst.

12   CDCR Secretary Kathleen Allison and Warden Campbell are legally responsible for the

13   welfare of all inmates.

14   Plaintiff alleges a violation of the Fourteenth Amendment for a threat to safety.

15   Defendant CDCR Secretary Kathleen Allison and Warden Campbell created and perpetuated a

16   policy of custom where the method for an inmate to get his LSS is to write a request to the case

17   records office, who then prints it and mails it to the inmate. Anyone can write a request

18   pretending to be someone else, and a LSS will be dropped in the mail which is sorted in a public

19   area where anyone can see it, left in a cell if the inmate is not in it.  The LSS and the classification

20   chrono both have sensitive information on them, yet the classification chrono can only be gotten

21   in private through an inmate's counselor.  If Plaintiff LSS had been required to be given to him by

22   his counselor, the counselor would have seen sensitive information and brought it to Plaintiff's

23   attention and fixed the problem, Plaintiff's constitutional right would not have been violated.

24   The current system allows sensitive LSS information that should be confidential and private to

25   become accessible by everyone which puts some inmates lives unnecessarily in danger.

26   Plaintiff alleges he suffered a dislocated jaw that still hurts, permanent fear, stress, PTSD

27   and threat to Plaintiff's future safety due to being falsely labeled child abuser.

28   As remedies, Plaintiff seeks compensatory monetary and punitive damages.

4

1    **C.    Discussion**

2    Plaintiff's complaint fails to state a cognizable claim under 42 U.S.C. § 1983.

3    **1.    Federal Rule of Civil Procedure 8**

4    Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain

5    statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

6    Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause

7    of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678

8    (citation omitted).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a

9    claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S.

10    at 555).  While factual allegations are accepted as true, legal conclusions are not.  *Id.*; *see also*

11    *Twombly*, 550 U.S. at 556–57; *Moss*, 572 F.3d at 969.

12    As explained below, Plaintiff's complaint fails to state a claim.

13    **2.    Supervisory Liability**

14    To the extent that Plaintiff seeks to hold Defendants Secretary Allison, Warden Campbell

15    and John Doe supervisor liable based solely upon their supervisory roles, Plaintiff may not do so.

16    Liability may not be imposed on supervisory personnel for the actions or omissions of their

17    subordinates under the theory of respondeat superior.  *Iqbal*, 556 U.S. at 676–77; *Simmons v.*

18    *Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d

19    1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

20    Supervisors may be held liable only if they "participated in or directed the violations, or

21    knew of the violations and failed to act to prevent them."  *Taylor v. List*, 880 F.2d 1040, 1045

22    (9th Cir. 1989); *accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v.*

23    *Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).  Supervisory liability may also exist without any

24    personal participation if the official implemented "a policy so deficient that the policy itself is a

25    repudiation of constitutional rights and is the moving force of the constitutional violation."

26    *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations

27    marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970).

28    ///

1    Plaintiff does not allege that Defendants were personally involved in any constitutional

2    deprivation.  Further, there is no factual allegation that any policy is "so deficient that the policy

3    itself is a repudiation of constitutional rights and is the moving force of the constitutional

4    violation."  The policy alleged is not a repudiation of constitutional rights.

5    Plaintiff alleges John Doe supervisor failed to adequately train the records analyst.  A

6    "failure to train" or "failure to supervise" theory can be the basis for a supervisor's liability under

7    § 1983 in only limited circumstances, such as where the failure amounts to deliberate indifference.

8    *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 387–90 (1989). To establish a failure-to-

9    train/supervise claim, a plaintiff must show that "'in light of the duties assigned to specific officers

10   or employees, the need for more or different training [or supervision] [was] obvious, and the

11   inadequacy so likely to result in violations of constitutional rights, that the policy-makers ... can

12   reasonably be said to have been deliberately indifferent to the need.'" *Clement v. Gomez*, 298 F.3d

13   898, 905 (9th Cir. 2002) (quoting *Canton*, 489 U.S. at 390).

14   Ordinarily, a single constitutional violation by an untrained employee is insufficient to

15   demonstrate deliberate indifference for purposes of failure to train. *Connick v. Thompson*, 563 U.S.

16   51, 62 (2011). Instead, a plaintiff must usually demonstrate "[a] pattern of similar constitutional

17   violations by untrained employees," *id.*, unless the need for training is "so obvious" and "so likely

18   to result in the violation of constitutional rights," that "the failure to provide proper training may

19   fairly be said to represent a policy for which the city is responsible, and for which the city may be

20   held liable if it actually causes injury," *Canton*, 489 U.S. at 390.

21   Plaintiff fails to alleges facts to support liability on a failure to train basis.

### 3.    Eighth Amendment – Failure to Protect

23   The Eighth Amendment protects prisoners from inhumane methods of punishment and

24   from inhumane conditions of confinement.  *Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v.*

25   *Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006).  Thus, no matter where they are housed, prison

26   officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing,

27   sanitation, medical care, and personal safety.  *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir.

28   2000) (quotation marks and citations omitted).  To establish a violation of the Eighth

1    Amendment, the prisoner must "show that the officials acted with deliberate indifference . . ."

2    *Labatad v. Corrs. Corp. of Amer.*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Gibson v. Cty. of*

3    *Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)).

4             Prison officials have a duty under the Eighth Amendment to protect prisoners from

5    violence at the hands of other prisoners or others because being violently assaulted in prison is

6    simply not part of the penalty that criminal offenders pay for their offenses against society.

7    *Farmer*, 511 U.S. at 833; *Clem v. Lomeli*, 566 F.3d 1177, 1181 (9th Cir.2009); *Hearns v.*

8    *Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005).  However, prison officials are liable under the

9    Eighth Amendment only if they demonstrate deliberate indifference to conditions posing a

10   substantial risk of serious harm to an inmate; and it is well settled that deliberate indifference

11   occurs when an official acted or failed to act despite his knowledge of a substantial risk of serious

12   harm.  *Farmer*, 511 U.S. at 834, 841; *Clem*, 566 F.3d at 1181; *Hearns*, 413 F.3d at 1040.  Mere

13   negligent failure to protect an inmate from harm is not actionable under Section 1983. *See*

14   *Farmer*, 511 U.S. at 835, 114 S.Ct. 1970.

15            To the extent Plaintiff's claim concerns a housing determination, there is no constitutional

16   violation. An inmate has no constitutional right to a particular security classification or housing.

17   *Myron*, 476 F.3d at 718 (9th Cir. 2007).  In *Myron v. Terhune*, the Ninth Circuit held that a state

18   prisoner's allegedly improper classification to a higher-level security facility than indicated by his

19   individual security classification did not violate the Eighth Amendment. *Myron*, 476 F.3d at 719.

20   As the court noted, because "the mere act of classification 'does not amount to an infliction of

21   pain,' it 'is not condemned by the Eighth Amendment.' " *Id.* (citation omitted).

22            Here, Plaintiff fails to adequately allege that Defendants J. Pruitt, case records analyst, or

23   John Doe, case records supervisor, knew of any specific risk of harm to Plaintiff from an assault

24   by an inmate.  Plaintiff does not allege that Defendants shared the information with other inmates

25   or had any knowledge that Plaintiff would share the information.  At most, Plaintiff alleges that

26   Defendants should have known of a risk of harm to Plaintiff because Plaintiff would be sharing

27   the information.  Plaintiff does not allege that he informed Defendants of any specific threat of

28   harm that he faced.  Plaintiff makes vague and conclusory allegations that these Defendants knew

7

1  he faced a substantial risk of serious harm but fails to explain or demonstrate they drew the

2  inference. *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).  Plaintiff fails to state a

3  cognizable claim against any Defendant because Plaintiff fails to allege any factual support that

4  any defendant was aware that Plaintiff was at risk of serious harm and failed to take reasonable

5  action.

6  **4.    Privacy**

7  To the extent Plaintiff is claiming some privacy interest in the LSS, the Court is not aware

8  of any such protected right.  *See*, *e.g.*, *Seaton v. Mayberg*, 610 F.3d 530, 534 (9th Cir. 2010) (a

9  prisoner does not have a "constitutionally protected expectation of privacy in prison treatment

10  records when the state has a legitimate interest in access to them."); *Michenfelder v. Sumner*, 860

11  F.2d 328, 333 (9th Cir. 1988) (incarcerated prisoners retain only a limited right to bodily privacy).

12  **5.    Doe Defendants**

13  "As a general rule, the use of 'John Doe' to identify a defendant is not favored."  *Gillespie*

14  *v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  Plaintiff is advised that John Doe or Jane Doe

15  defendants (i.e., unknown defendants) cannot be served by the United States Marshal until

16  Plaintiff has identified them as actual individuals and amended his complaint to substitute names

17  for John Doe or Jane Doe.

18  **III.    Failure to Prosecute and Failure to Obey a Court Order**

19  **A.    Legal Standard**

20  Local Rule 110 provides that "[f]ailure . . . of a party to comply with these Rules or with

21  any order of the Court may be grounds for imposition by the Court of any and all sanctions . . .

22  within the inherent power of the Court."  District courts have the inherent power to control their

23  dockets and "[i]n the exercise of that power they may impose sanctions including, where

24  appropriate, . . . dismissal."  *Thompson v. Hous. Auth.*, 782 F.2d 829, 831 (9th Cir. 1986).  A

25  court may dismiss an action, with prejudice, based on a party's failure to prosecute an action,

26  failure to obey a court order, or failure to comply with local rules.  *See*, *e.g.*, *Ghazali v. Moran*, 46

27  F.3d 52, 53–54 (9th Cir. 1995) (dismissal for noncompliance with local rule); *Ferdik v. Bonzelet*,

28  963 F.2d 1258, 1260–61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring

8

1  amendment of complaint); *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130–33 (9th Cir. 1987)

2  (dismissal for failure to comply with court order).

3      In determining whether to dismiss an action, the Court must consider several factors:

4  (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its

5  docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of

6  cases on their merits; and (5) the availability of less drastic sanctions. *Henderson v. Duncan*, 779

7  F.2d 1421, 1423 (9th Cir. 1986); *Carey v. King*, 856 F.2d 1439, 1440 (9th Cir. 1988).

8      **B.    Discussion**

9      Here, Plaintiff's first amended complaint is overdue, and he has failed to comply with the

10  Court's order.  The Court cannot effectively manage its docket if Plaintiff ceases litigating his

11  case.  Thus, the Court finds that both the first and second factors weigh in favor of dismissal.

12      The third factor, risk of prejudice to defendant, also weighs in favor of dismissal, since a

13  presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action.

14  *Anderson v. Air W.*, 542 F.2d 522, 524 (9th Cir. 1976).  The fourth factor usually weighs against

15  dismissal because public policy favors disposition on the merits. *Pagtalunan v. Galaza*, 291 F.3d

16  639, 643 (9th Cir. 2002).  However, "this factor lends little support to a party whose

17  responsibility it is to move a case toward disposition on the merits but whose conduct impedes

18  progress in that direction," which is the case here. *In re Phenylpropanolamine (PPA) Products*

19  *Liability Litigation*, 460 F.3d 1217, 1228 (9th Cir. 2006) (citation omitted).

20      Finally, the Court's warning to a party that failure to obey the court's order will result in

21  dismissal satisfies the "considerations of the alternatives" requirement. *Ferdik*, 963 F.2d at 1262;

22  *Malone*, 833 at 132–33; *Henderson*, 779 F.2d at 1424.  The Court's October 15, 2025 screening

23  order expressly warned Plaintiff that his failure to file an amended complaint would result in a

24  recommendation of dismissal of this action, with prejudice, for failure to obey a court order and

25  for failure to state a claim.  (ECF No. 14.)  Thus, Plaintiff had adequate warning that dismissal

26  could result from his noncompliance.

27      Additionally, at this stage in the proceedings there is little available to the Court that

28  would constitute a satisfactory lesser sanction while protecting the Court from further

unnecessary expenditure of its scarce resources. Although Plaintiff is not proceeding *in forma pauperis* in this action, it appears that monetary sanctions will be of little use and the preclusion of evidence or witnesses is likely to have no effect given that Plaintiff has ceased litigating his case.

**IV.    Conclusion and Recommendation**

Accordingly, the Court HEREBY ORDERS the Clerk of the Court to randomly assign a District Judge to this action.

Furthermore, the Court finds that dismissal is the appropriate sanction and HEREBY RECOMMENDS that this action be dismissed, with prejudice, for failure to state a claim pursuant to 28 U.S.C. § 1915A, for failure to obey a court order, and for Plaintiff's failure to prosecute this action.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." **Objections, if any, shall not exceed fifteen (15) pages or include exhibits. Exhibits may be referenced by document and page number if already in the record before the Court. Any pages filed in excess of the 15-page limit may not be considered.** The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __December 1, 2025__            ___/s/ Barbara A. McAuliffe___
                                          UNITED STATES MAGISTRATE JUDGE

10